.J. M. DOUD, Respondent, v. E. H. REID *et al.*, Appellants.

Kansas City Court of Appeals, April 17, 1893.

1. **Practice, Trial and Appellate :**   EVIDENCE:   ISSUE FOR THE JURY.   Where there is evidence on both sides of any issue, it should go to the jury; and where there is evidence of a substantial character, the appellate court will not undertake to balance it and find the preponderance.

2. **Evidence:** SIGNATURE: TEST.   After a witness has testified that the signature to the note in suit looked like the signature of defendant, but he might be mistaken, then the distinction between a genuine signature and a copied one is immaterial, where there are no admitted signatures before the witness.

3. ———: ———: COLLATERAL ISSUE: MAKING EVIDENCE.   On the trial of the genuineness of a signature, other signatures must be conceded to be genuine to make them admissible in evidence; and defendant cannot introduce signatures as his own, unless plaintiff admits their genuineness, as he could thereby make evidence for himself.

4. ———: ———: TRACING: BLANK NOTES.   On the trial of the genuineness of a signature, the fact that a signature could be traced on paper similar to the paper on which the note in suit was written, is immaterial; and it is not error to refuse to allow the jury to examine blank notes on similar paper.

5. **Practice, Trial:** TAKING ANSWER TO JURY ROOM: MAKING TESTIMONY. It is proper to refuse to allow the answer of defendants. containing their signatures to a plea of *non est factum*, to go the jury room as it would permit parties to make up testimony to suit. themselves.

6. **Instructions:** DIRECTING AMOUNT OF VERDICT. In a suit on a note, an instruction directing the amount the jury shall return their verdict. for is irregular, but is not reversible error where the amount is. correct.

7. **Collateral Securities:** AMOUNT OF RECOVERY: OF ACCOMMODATION: PAYEE. Whalen made his note to Washburn who indorsed the note to plaintiff as collateral to secure Whalen's debt for a less amount to plaintiff. *Held,* plaintiff could recover of Whalen's securities on said note only the amount of Whalen's original debt to him.

8. **Practice, Trial and Appellate:** INSTUCTIONS: GENERAL OBJECTIONS. A general objection to an instruction covers all points of objection which can afterwards be made.

9. **Instructions:** COMMENT. An instruction commenting on the evidence is properly refused.

*Appeal from the Cass Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

AFFIRMED.

*Noah M. Givan,* for appellants.

(1) Plaintiff in chief failed to make a *prima facie* case, as the weight and preponderance of the evidence proved the defendants had not signed the note and the court committed error in permitting it to be read in evidence to the jury. *Monitor Plow Co. v. Born,* 51 N. W. Rep. (Neb.) 129; Greenleaf on Evidence, sec. 384; *Haysler v. Dawson,* 28 Mo. App. 538; *Polack v. Hannauer,* 26 Mo. App. 260; *Johnson v. McMurry,* 72 Mo. 278; *Chandler v. Fleeman,* 50 Mo. 239. (2) The plaintiff presented no such substantial evidence as entitled him to a judgment, and the appellate court will reverse and remand. *Spohn v. Railroad,* 87 Mo. 74; s. c. 101 Mo. 452; *Gaslight Co. v. Ins. Co.,*

33 Mo. App. 360; *Polack v. Hannauer*, 26 Mo.
App. 260, 264; *Bank v. Moorman*, 38 Mo. App. 484;
*Lionberger v. Pohlman*, 16 Mo. App. 392; *Bank v.
Overall*, 16 Mo. App. 510; *Henderson v. Railroad*, 36
Mo. App. 109; *Friesz v. Fallon*, 24 Mo. App. 439;
*Borgraefe v. Knights of Honor*, 22 Mo. App. 127;
*State v. McNamara*, 100 Mo. 117; *Garrett v. Greenwell*,
92 Mo. 125; *Whitsett v. Ransom*, 79 Mo. 258. (3) It
was error not to permit plaintiffs' expert witness
to give his opinion as to the distinction between a signa-
ture traced or copied from a signature, and a signature
made by a party; and as to whether one who writes an
ordinary hand could lay paper like the note in suit over
a name and trace it accurately with a pencil. Rogers
on Expert Testimony, sec. 124, 127; *Commonwealth
v. Webster*, 5 Cush. 295; 52 Am. Dec. 711; *Moody v.
Rowell*, 17 Pick. 490; 28 Am. Dec. 317; *Mills v. Loomis*,
75 N. Y. 288; 31 Am. Rep. 470. (4) The checks of
defendants, paid by the bank in the ordinary course of
business before the date of the note in suit, *and admitted
by them to be genuine*, were admissible in evidence.
1 Greenleaf on Evidence, sec. 581; *State v. Clinton*, 67
Mo. 380; *State v. Scott*, 45 Mo. 302; *State v. Tompkins*,
71 Mo. 613; *Rose v. Bank*, 91 Mo. 399; *Springer v. Hall*,
83 Mo. 697; *Corby v. Weddle*, 57 Mo. 452. (5) The
instruction number 2 for plaintiff directing the jury to
render a verdict for $769, if they found for plaintiff, was
erroneous. *Wells v. Zallee*, 59 Mo. 509; Colebrook on
Collateral Securities, sec. 92; *Stalker v. McDonald*, 6
Hill, 93; 40 Am. Dec. 389; *Bank v. Cannon*, 46 Minn.
95; 24 Am. St. Rep. 189; *Bank v. Roberts*, 45 Wis. 373.

*James T. Burney* and *R. T. Railey*, for respondent.

(1) There was an abundance of testimony to go to
the jury proving the execution by appellants of the

note sued on.   Under the law, if there was any sub-stantial evidence tending to support that allegation, the verdict of the jury should stand.   *Pike v. Martindale*, 91 Mo. 268; *Eswin v. Railroad*, 96 Mo. 290; *Wire Co. v. Hardware Co.*, 97 Mo. 289; *Minter v. Cupp*, 98 Mo. 26; *Krider & Milner*, 99 Mo. 145; *Blacksmith & Wrecking Co. v. Carreras*, 26 Mo. App. 229; *Ins. Co. v. Shultz*, 30 Mo. App. 91; *Pembroke v. Railroad*, 32 Mo. App. 62; *Ewing v. Phillips*, 35 Mo. App. 144; *Reber v. Railroad*, 38 Mo. App. 646; *Warren v. Maloney*, 39 Mo. App. 295; *Nelson v. Nelson*, 41 Mo. App. 130; *Mauerman v. Railroad*, 41 Mo. App. 349.   (2) It was not error to refuse to permit the expert witness Doveton to testify as to whether "one could lay the note sued on over a name and trace it with the point of a pen accurately."   The note was in evidence before the jury, and they could judge of the possibility of such tracing as well as any one else.   This was not proper expert testimony.   *Kendall v. Bain*, 46 Mo. App. 588; *Williams v. Iron Co.*, 30 Mo. App. 667; *Kennedy v. Holladay*, 25 Mo. App. 514; *Muff v. Railroad*, 22 Mo. App. 584; *Belch v. Railroad*, 18 Mo. App. 85; *King v. Railroad*, 98 Mo. 235; *Gutridge v. Railroad*, 94 Mo. 472; *Gavisk v. Railroad*, 49 Mo. 276; *Jones v. Portland*, 50 N. W. Rep. number 10, p. 735, *Dundas v. Lansing*, 75 Mich. 503; *Muldowney v. Railroad*, 36 Iowa, 472; Best on Evidence, sec. 512; *Railroad v. Beebe*, 14 Neb. 472; *Parsons v. Lindsay*, 26 Kan. 430; *Farrand v. Railroad*, 21 Wis. 441.   (3) The checks offered in evidence by defendants for comparison, not being admitted to be genuine, were inadmissible.   *Edmonston v. Henry*, 45 Mo. App. 348; *Rose v. Bank*, 91 Mo. 399; *State v. Clinton*, 67 Mo. 380; *Bank v. Mudgett*, 44 N. Y. 524; *Van Wyck v. McIntosh*, 14 N. Y. 439; *Bank v. Robert*, 41 Mich. 710; *Randolph v. Laughlin*, 48 N. Y. 456.   (4) Instruction number "2," given on the part of plaintiff and com-

plained of by defendants, correctly declared the law and was properly given. Plaintiff, as a holder of the note in controversy as collateral security, had the right to collect same, deduct the expenses of collecting, to have the remainder applied to the payment of his debt and the overplus, if any, paid to the holder of the note. *Wheeler v. Newbould*, 16 N. Y., 392; *Nelson & Sturges v. Edwards*, 40 Barb. 279; *Farwell v. Bank*, 90 N. Y. 483; *Mfg. Co. v. Falvey*, 20 Wis. 200; *Bridle v. Grau*, 42 Mo. 361; *Holloway v. Holloway*, 103 Mo. 285.

ELLISON, J.—This action is founded on a promissory note for $630, executed by defendants as sureties for one, E. P. Whalen, to R. H. Washburn and by him sold and indorsed to plaintiff. The defense was a denial under oath of the execution of the note. The judgment was for plaintiff.

We will notice the several grounds relied upon for reversal in the order in which they are set forth in defendants' brief. The first is that the court committed error in permitting the note to be read in evidence for the reason that the weight of the evidence showed that the defendants had not signed it. But there was evidence, which, if believed, showed that they did sign it. It was therefore entirely proper for the court to permit the jury to say which was the fact.

The next point is embraced in the first, viz.: That there was no substantial evidence entitling plaintiff to judgment. There was evidence for the consideration of the jury. It ought not, therefore, to require a citation of authorities to show that when there is evidence in a cause of substantial character we will not undertake to balance it to find which way it preponderates after the jury has determined it in the verdict and the trial court considered it on a motion for a new trial.

It is next objected that the trial court ruled out

the following question propounded on cross-examination to a bank cashier, one of plaintiff's witnesses, to prove the signatures to the note, and who was familiar with the signatures of some of the defendants, viz.: "In signatures that would be copied what would be the distinction in a signature copied from a signature made by the party; what would be the rule in regard to that?" This witness had already testified that the signatures to the note in suit looked like the signatures of defendants, Reid and Holloway, but that he might be mistaken as to its being their genuine signature. The most the witness would say was that the signatures to the note in suit looked like the signatures of these defendants. We cannot see therefore what test of the witness an answer to this question could have been, in view of his testimony preceding the question. But it may be, and probably was, the object of counsel to institute comparison of handwriting by bringing in bank checks which these defendants had signed on the bank of which the witness was the cashier. For in the next question the witness was asked to get from his bank the signatures of defendant Holloway. Plaintiff denied that they were genuine signatures of Holloway. Defendants then offered some checks purporting to have been signed by defendant Reid and the genuineness of these were also denied by plaintiff. The court thereupon refused to permit the checks of either to be introduced in evidence, and we think its action was correct in this respect. Defendants recognize that the rule is, in this state, that in order to make such signatures proper evidence they must be conceded to be genuine. *Rose v. Bank,* 91 Mo. 399; *Edmonston v. Henry,* 45 Mo. App. 346; *State v. Clinton,* 67 Mo. 380. But their contention is that, if the party which the writing purports to be the signature of admits it to be his

signature, this is sufficient regardless of what the other party may say. This will not do, at least when the question arises as this has. One of the principal reasons for the rule excluding such testimony is that it brings in collateral issues which would produce endless confusion in trials. In the case at bar the plaintiff declared these signatures were not genuine and could have tendered that collateral issue in the midst of the trial, an issue which would frequently be as tedious to investigate and as doubtful of correct result as the main matter in litigation. The concession of the genuineness of the signature must be such concession as will prevent and avoid an issue over the matter. To permit a party to introduce in his own behalf, over the protest of his opponent as to its genuineness, a signature which he claims to have written, or, indeed, which he may have written, would put it in the power of such party to make evidence for himself. A signature not genuine might be admitted to be so, if it would serve the purpose of defense. So signatures might be made with a view to future use. The view we have taken of this is supported in New York as well as in this state. *Van Wyck v. McIntosh,* 14 N. Y. 439; *Bank v Mudgett,* 44 N. Y. 524.

It is next urged that the court erred in not permitting defendants to ask of this witness whether a man could lay the note in suit "over a name and trace it with a point of a pencil accurately." In our opinion if this was a matter for expert testimony it was not relevant to this case. That a signature could be traced through thin paper may be conceded, but certainly this well-known fact would have a very remote tendency to prove that *these* signatures were traced. The witness was not asked if the signatures on the note bore evidence of tracing. Suppose the witness had been permitted to answer and had said that signatures could

be traced by laying over them a thin piece of paper similar to the paper upon which the note in suit was written, would such answer have tended to prove that these signatures were traced? All that it could have amounted to would have been to show that the act which defendants thought had been done in this case was one which could be performed or was possible of performance. And this the jury knew without proof.

The foregoing remarks will also apply to the fifth objection to the action of the court, wherein defendants were refused permission to give to the jury certain blank notes printed on paper like the paper upon which the note in suit was printed, so that the jury might determine "whether by using such notes names could be traced by placing them over the signature." This would possibly have had the effect of showing that such a thing *could* be done, but had no bearing upon the issue as to whether it *was* done.

Complaint is next made of the action of the court in refusing defendants' offer to permit the jury to take their answer in the cause to the jury-room. This offer must have been for the purpose of having the jury to see the signature of the defendants to their affidavit denying the execution of the note. It was properly disallowed. It was no more than if defendants had offered to write their names at the trial and submit them to the jury. The signatures here offered to be given to the jury were the signatures which offered the issue of forgery of the signatures to the note. If such practice could be permitted it would put it in the power of parties to make up testimony to suit themselves. See *Springer v. Hall*, 83 Mo. 695.

Coming to the instructions given for plaintiff we find complaint made as to the second in which the court directed the amount the jury should find for

plaintiff on the note, if they found for him. This was irregular, but, since the amount named was the proper amount due, it is not reversible error. *Wells v. Zallee,* 59 Mo. 509. It is, however, insisted that plaintiff only held the note in controversy as collateral security for an amount less than this note and interest, and that he should have been limited in his recovery to the amount for which the note was held as collateral. The facts are that the note was executed to Washburn and by him indorsed to plaintiff as collateral for the sum of $580, owing by Whalen to plaintiff, and for which latter sum Whalen executed his note to plaintiff. This was developed in the evidence for plaintiff and we must hold the point well taken. For the note in suit as between Whalen the principal, Washburn the payee and these defendants, sureties, was accommodation paper. The note in suit was primarily the obligation of Whalen who pledged it, as collateral, to this plaintiff. If the holder of the collateral recover more than his principal debt, he recovers it for the use of his principal debtor, yet it is apparent justice that if no one has a right to the overplus, by reason of his relation to the parties or the transaction, it ought not to be included in the judgment. So it is said that: "As between the pledgor and pledgee, when the securities pledged are the obligations of the pledgor, the pledgee can only recover his principal debt. For it would be worse than idle that a plaintiff should recover an amount which he would be obliged instantly to restore to the defendant. So when the collateral is in the hands of a *bona fide* holder, without notice of a good defense against his assignor, the general and better rule appears to be, that the pledgee can recover the amount of his principal debt only." These are the words of Judge RYAN, in *Union Nat. Bank v. Roberts,* 45 Wis. 373. See also same statement of the

law in *Bank v. Cannon*, 46 Minn. 95; Colebrook on Collateral Securities, sec. 92.

It is quite probable that the trial court, in point of fact, did not pass upon this question. The objection to the instruction was probably on the technical ground that the jury should be allowed to make their own calculation of amount. The entire trial below seems to have been confined to the sole question of whether defendants executed the note. But, as we understand the practice as approved by the supreme court, a general objection to an instruction will cover all points of objection which can afterwards be made.

Instruction number 1, refused for defendants, was properly refused. It was singling out a portion of the case, and amounted to a comment on the evidence. All in it that was proper was well presented to the jury in other instructions. Instructions for plaintiff with the exception of the one above noted were unexceptionable. We see no substantial objection to number 4. The testimony of Washburn concerning another note of $500, conceding it to have been improper, could have had no effect upon the jury in passing on the issue in the cause.

We have examined the alleged grounds for new trial as presented in the affidavits filed by defendants as well as those in opposition by plaintiff, and find no error in the court's ruling thereon. We do not care to extend this opinion by going into the matter further than to say that after considering them we have arrived at the conclusion that the trial court made the proper disposition of the motion in this respect.

If the plaintiff will, within fifteen days, enter a *remittitur* for all over the amount of the principal debt and interest owing by Whalen to plaintiff, for which the note in suit was given as collateral, the judgment will be affirmed. Otherwise it will be reversed and remanded. All concur,