CHARLES KRAEMER, Respondent, v. F. M. WARD, Appellant.

**Springfield Court of Appeals, July 7, 1910.**

1. **BILLS AND NOTES: Pleading: Non Est Factum: Burden of Proof: Question for Jury.** In a suit on a note where the defendant pleads *non est factum*, the burden is on plaintiff to prove that defendant signed the note, and where there is a conflict of evidence on this issue, the verdict of the jury is conclusive on appeal.

2. **APPEAL AND ERROR: Granting New Trial: Self-invited Error.** In a suit on a note one of the defendants, an accommodation maker, pleaded *non est factum*, and the jury found for this defendant. The court granted a new trial because of the conduct of defendant's attorney in continually asking questions over the objections of plaintiff, and contrary to the ruling of the court, which elicited from the witness answers to the effect that the real maker of the note was in the habit of signing other person's names to notes. *Held*, that even if it was error to bring out this evidence, it had been invited by plaintiff's attorney in asking questions opening up the issue, and held further that the court erred in granting a new trial on this ground.

3. ———: ———: **Grounds for New Trial.** Nothing can be considered by the appellate court as grounds for a new trial save and except the grounds set forth in the order of the court, sustaining the motion, as appears from the record and the grounds set forth in the motion itself.

Appeal from Wayne Circuit Court.—*Hon. Joseph J. Williams,* Judge.

REVERSED AND REMANDED (*with directions*).

*V. V. Ing* for appellant.

(1) The plea of *non est factum* raises a question of fact, and the burden of proof is on the plaintiff to prove that the defendant signed the note. Edmonston v. Henry, 45 Mo. App. 346. (2) If the discretion of the trial court is wrongly used, the appellate court will not allow the action to stand. Coleman v. Cole, 96 Mo.

App. 22. (3) The only question in this appeal is the grounds assigned in the order granting the new trial. Kauffman-Wilkinson Co. v. Christophel, 59 Mo. App. 80; Kelleher v. United Co., 126 S. W. 796; McVey v. Barker, 92 Mo. App. 498; Caris v. Nimmons, 92 Mo. App. 66. (4) If defendant had been permitted to elicit from witnesses answers to the questions about Enloe having signed Ward's name on the note, it would not have been erroneous, for the reason that a party cannot complain of an error which he himself invited, and plaintiff invited it. Bethany Bank v. Cushman, 66 Mo. App. 102; State v. Dettmer, 124 Mo. 426. (5) Where there is no substantial evidence on which to base the court's order granting a new trial, and the case is such that a verdict in favor of the party to whom the new trial was granted would not be permitted to stand, the appellate court will set aside the order, even though it was the first new trial given. Ottomeyer v. Pritchett, 178 Mo. 160; Scullin v. Railroad, 184 Mo. 695.

NIXON, P. J.—This was an action by Charles Kraemer against F. M. Ward and W. L. Mathews on a promissory note for two hundred dollars, dated October 10, 1900, payable twelve months after date, bearing compound interest, and signed as follows: J. S. Enloe, M. D., F. M. Ward, W. L. Mathews. On the back appear two credits, one for sixteen dollars paid on October 10, 1901, and another for six dollars, paid on February 6, 1908, and plaintiff testified that these were payments of interest made by Enloe and that he (plaintiff) did not tell F. M. Ward that Enloe was not paying the interest.

The defendant Ward filed a plea of *non est factum*, under his oath denying the execution of the note by him. Defendant Mathews filed a general denial. Upon trial, a verdict was returned in favor of plaintiff and against W. L. Mathews for $332.10, but in favor of defendant

149 App—28

Ward. Plaintiff filed a motion for a new trial, which was by the court sustained as shown by the following order (caption omitted):

"Now at this day the motion for a new trial in this cause filed on yesterday, coming on to be heard, is by the court sustained and the verdict of the jury heretofore rendered in the cause is by the court set aside, and a new trial in the cause is granted because of the conduct of the attorney for the defendant, F. M. Ward, in the presence of the jury and in the trial of the cause, which conduct the court finds from the evidence to be substantially stated in the eighth cause assigned in plaintiff's motion for a new trial herein referred to; and the court believing under the peculiar circumstances and evidence in the case as disclosed by the trial of the case that such conduct on the part of the attorney for the defendant, F. M. Ward, in the presence and hearing of the jury on the trial may have caused the jury to think that the fact attempted to be proved by the witnesses as mentioned in the eighth cause in the motion for a new trial were known to said attorney to be within the knowledge of the witnesses and susceptible of being proven by them, and the court thinking it more probable that the impressions or belief on the part of the jury that such facts were true, and the court believing that such state of facts was, under the peculiar circumstances and evidence in the case, calculated to mislead the jury to the prejudice of the plaintiff, the verdict is for these reasons set aside and a new trial granted."

The eighth ground assigned in the motion for a new trial upon which the above order was based is as follows:

"Eighth. Because the verdict of the jury is the result of passion and prejudice produced by counsel, V. V. Ing, attorney for the defendant, asking witness James A. Kite if he had ever seen Dr. Enloe writing names or writing your name and imitating your own writing, the court, thereupon, on the objections of plaintiff's counsel

ruled that such testimony was incompetent, and counsel for the defendant thereupon produced Alexander De-Ruse as a witness for defendant and asked him if Dr. Enloe had ever told him anything about his putting other people's names on notes, and then counsel for defendant recalled D. B. Holmes as a witness for defendant and asked him if he had ever heard Dr. Enloe say anything about putting other people's names or signatures on notes, all of which counsel for defendant persisted in doing over the objections of the plaintiff and contrary to the ruling of the court, at each time when he attempted to introduce the said incompetent evidence, and by so doing thereby so prejudiced the jury as to cause them to return a verdict for defendant, F. M. Ward."

Defendant, F. M. Ward, has appealed, contending that the trial court erred in setting aside the verdict and granting a new trial.

Plaintiff testified that the note in question was sent to him by mail by Dr. Enloe and that it was Enloe's note for money which plaintiff lent to Enloe. That he, of course, did not see Ward sign the note in question and could not swear that Ward did sign it. He stated that Enloe turned over notes, amounting—principal and interest—to about five thousand dollars, with securities on them. That he and Enloe were raised in the same county and that Enloe's brother and his (Kraemer's) brother married sisters.

Defendant Ward was called by the plaintiff, and being shown a road overseer's bond with his name signed as surety, admitted the genuineness of that signature and others which plaintiff produced, but he denied that he had signed his name to the note sued on. The plaintiff then examined several expert witnesses seeking to establish the genuineness of the signature of F. M. Ward on the note. No witness swore that Ward signed the note. Plaintiff's best witnesses, on comparing the signature on the note with those which Ward

admitted to be genuine, stated that the signatures were similar—that there was a close resemblance—but a slight difference was detected.

Defendant Ward, having pleaded *non est factum,* the burden was on the plaintiff to prove that Ward signed the note. [Edmonston v. Henry, 45 Mo. App. 346.] There being a conflict in the evidence as to whether Ward did in fact sign the note, the solution reached by the jury must stand. [Doud v. Reid, 53 Mo. App. 553.]

The order granting the new trial, as we have seen, is based on certain questions asked by defendant Ward's attorney of defendant's witnesses. Defendant insists, however, that plaintiff opened this field of inquiry before any suggestion was made by defendant that Enloe had forged defendant Ward's name to the note, and that, therefore, plaintiff invited the inquiry and ought not be heard to complain because defendant followed his lead.

Plaintiff, being examined by his attorney, testified: "Q. You have a note against Ing and William Woods here, signed as security for Dr. Enloe, haven't you? A. Yes, sir. Q. Haven't heard anybody charging forgery on any of these notes, that Dr. Enloe forged their names, except these Ward cases and DeRuse cases, have you? Are there any other cases, any other instances where anybody ever said Enloe ever forged a name in all this five thousand dollars' worth, except this DeRuse and Ward? A. No, I *think* those are *about* the only ones. Q. No answers filed in any of these cases except the Ward and DeRuse cases; not even Ing and Wood say that Enloe forged their names I believe? A. No, sir."

Defendant Ward testified in his own behalf, and on cross-examination by plaintiff's attorney, the following appears: "Q. So far as you know, you never heard of Enloe forging anybody's name except yours and De-Ruse's? A. I have heard some others say so. Q. You are referring now for the Holmes?' A. No, sir; Kip

Ward told me he signed his name to several notes. Q. Was Kip Ward just talking and you heard him? A. No, sir; he told me he would swear it. Q. You haven't got him here, have you? A. I can get him if you want him. Q. I don't want him. You haven't got him here as a witness, have you? A. No, sir. Q. If you knew that he knows of Enloe actually forging any notes you would have had him here? A. That's what he said. Q. Why didn't you have him subpoenaed as a witness if he knows of Enloe's forging any notes? A. That's what he said—there were other men heard him say he did."

After all of the above testimony had been introduced, defendant Ward called James A. Kite as a witness, who testified as follows: "Q. Do you know Dr. J. S. Enloe? A. Yes, sir; I did know him when he was here in Greenville. Q. How long did you know him? A. Several years. Q. You know anything about his writing names? Did you ever see him write a name, copy a name? A. Yes, sir." ("Mr. Raney for the plaintiff: 'Wait a minute. We object to that, if the court please.' The Court: 'Let the objection be sustained.' ") "Mr. Ing for the defendant Ward: 'Well, I will ask it more specific.' " "Q. I will ask you, Mr. Kite, if you ever saw Dr. Enloe copying, writing your name and imitating any writing? A. Yes, sir." ("Mr. Raney: 'Wait a minute, Mr. Witness; we object to that.' The Court: ('Let the objection be sustained.' ")

Alexander DeRuse was then sworn and examined by the defendant. He testified as follows: "Q. How long did you know Dr. Enloe? A. Why, I could not tell exactly; some six or eight years, probably. Q. I will ask you to state if Dr. Enloe ever told you anything about his forging other people's names on notes? A. Yes, sir." ("Mr. Raney: 'We object to that.' The Court: 'Let the objection be sustained. Dr. Enloe is a perfectly competent witness in this case.' Mr. Ing, for the defendant, F. M. Ward: 'Yes, sir, but not available, your Honor.' ")

D. B. Holmes was then sworn and testified for the defendant as follows: "Q. Did you formerly live in this county? A. Yes, sir. Q. How long? A. I was raised here and I am forty years old; I live at Fredericktown now and have lived there about two years.   Q. Did you know Dr. Enloe? A. Yes, sir. Q. You ever hear Dr. Enloe say anything about his putting other people's names or signatures to notes?" ("Mr. Raney: 'We object to that, if the court please.' The Court: 'Let the objection be sustained. Mr. Ing, that same question had been excluded once. Don't repeat that. If you do, the court will take proper action about it.' ") It will be seen from the above that as soon as an objection was made by the plaintiff, the court interposed and refused to allow the witness to answer the question.

Section 801, Revised Statutes 1899, provides: "Only one new trial shall be allowed to either party, except . . . .; and every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." It has been held under this section that nothing can be considered by the appellate court as grounds for new trial save and except the grounds set forth in the order of the court sustaining the motion as appears from the record, and the grounds set forth in the motion itself.   [Millar v. Madison Car Co., 130 Mo. l. c. 522, 523, 529, 31 S. W. 574; Stanard Milling Co. v. Transit Co., 122 Mo. l. c. 269, 26 S. W. 704; Kaufman-Wilkinson Lumber Co., v. Christophel, 59 Mo. App. 80; Kelleher v. United Rys. Co., 126 S. W. l. c. 797.]

As the order sustaining the motion for new trial is based on the eighth ground assigned in said motion, the trial court based its action on the supposed passion and prejudice produced by counsel for defendant Ward in asking the above questions of James A. Kite, Alexander DeRuse and D. B. Holmes.

If it was error to attempt to go into this question of forgery, it was invited by the plaintiff, for, as we

have shown, this inquiry was opened in his own testimony and by his own attorney. If it was error for the defendant to ask the above questions, the plaintiff invited it by first introducing like evidence himself, so that he thereby disabled himself to make objections thereto otherwise available to him. [Bethany Savings Bank v. Cushman, 66 Mo. App. l. c. 105.] It is evident that the trial court, in sustaining the motion for a new trial, overlooked the same class of evidence as to forgery brought out by the plaintiff. The plaintiff, having himself by his own testimony, opened up the investigation as to Enloe imitating or writing names, cannot be heard to complain if defendant attempted to follow his lead. As his own evidence contributed to arouse the passion or prejudice of the jury, if any existed, he cannot be allowed to make his own conduct legal grounds for a new trial.

The judgment is accordingly reversed and the cause remanded with directions to set aside the order granting a new trial and to enter judgment for the defendant Ward in accordance with the verdict. All concur.