THE FIRST NATIONAL BANK OF ELYRIA, A CORPORATION, RESPONDENT, v. THE EQUIPMENT COMPANY, A CORPORATION, APPELLANT.[*]

Kansas City Court of Appeals. June 14, 1926.

*Corpus Juris-Cyc References: Agency, 2CJ, p. 938, n. 32; Appeal and Error, 4CJ, p. 1075, n. 55; Bills and Notes, 8CJ, p. 998, n. 8; Corporations, 14aCJ, p. 399, n. 39; p. 403, n. 83; p. 408, n. 24; Evidence, 22CJ, p. 377, n. 22; Trial, 38Cyc, p. 1612, n. 13; p. 1618, n. 36.

*William E. Byers* and *Spencer A. Gard* for respondent.

*Roy B. Thomson* and *Carl L. Crocker* for appellant.

ARNOLD, J.—This is a suit on a promissory note in the sum of $1000, purported to have been executed by defendant and payable to plaintiff.

Plaintiff is a national bank located at Elyria, Ohio, and on May 24, 1920, was doing business under the name of The National Bank of Elyria. Defendant was a corporation doing business in the State of Missouri, with its principal offices at Kansas City in said State.

The petition alleges that defendant, by its president H. J. Mayers, together with the Mutual Motor Stores Co., on May 24, 1920, executed a certain promissory note for value received, payable to The National Bank of Elyria (now The First National Bank in Elyria), in the sum of $1000, payable on demand at seven per cent per annum, at Elyria, Ohio; that the interest has been paid to September 15, 1922; that plaintiff is the owner and holder of said note and that prior to September 15, 1922, demand for payment was made and that the said note

and interest are due and unpaid. Judgment is asked for the amount of the note and interest. The answer denies the execution of the note by defendant.

The reply avers that the note sued on was executed by defendant, by its officer and agent H. J. Mayers, especially authorized thereunto; that defendant represented and held out the said H. J. Mayers as its officer and agent, and permitted said Mayers, with knowledge of the fact, to hold himself out as such officer and agent with authority to borrow money and make and execute notes and other obligations of defendant therefor, and otherwise generally manage and conduct its affairs, and that said Mayers did so hold himself out and so manage and conduct the affairs of defendant; that said Mayers was also president of the Mutual Motor Stores Company, a co-maker of the note in suit and owner, at that time, of all of the stock of defendant; that defendant borrowed money from plaintiff and others through and by Mutual Motor Stores Company to finance its operations, and otherwise; that the note sued on herein, executed by both the aforesaid companies, was made for the purpose of taking up and discharging, and did take up and discharge, indebtedness of defendant to plaintiff, for all of which reasons, defendant is estopped to deny the execution of the note sued on herein.

Upon the pleadings thus made, the cause was tried to a jury. Verdict and judgment were for plaintiff in the sum of $1163.33, with six per cent interest until fully paid. Motions for a new trial and in arrest were overruled and defendant appeals.

The evidence shows that on May 24, 1920, the note in question was executed and signed by The Equipment Company by H. J. Mayers, president; that prior to that date, the Mutual Motor Stores Company, through its president H. J. Mayers, a resident of Cleveland, Ohio, entered into negotiations with Messrs. Hess, Greene & Reid, owners of all the stock of the Equipment Company, defendant herein, for the purchase of the Equipment Company by the Mutual Motor Stores Company, and a contract of purchase was entered into whereby the stock of the Equipment Company should be placed in escrow in bank until the purchase price was paid; and that, in the meantime, the possession and control of defendant should remain in the sellers. The contract, in terms, provided "that second party (the Mutual Motor Stores Company) shall not have or in any manner claim to have any title, ownership, or right to possession in or to any of the assets or business of first party, whether mentioned in said agreement or otherwise, until such time as the whole of said balance of $86,500, together with the interest on any additional payment herein stipulated to be paid, has been paid in full."

It appears this purchase price was never paid by the Mutual Motor Stores Company and that its interest in said contract of purchase later was sold. The testimony shows the negotiations were conducted by H. J. Mayers for the Mutual Motor Stores Company and the signing by him of defendant's name to the note in issue is the basis of plaintiff's claim of liability thereon. One G. W. Kneisley, for plaintiff, testified by deposition that Mayers was president of the Mutual Motor Stores Company and in active charge of its affairs; that witness was a stockholder and director thereof and that he is a son-in-law of the president of plaintiff bank; that the proceeds of the loan in question were deposited to the credit of the Mutual Motor Stores Company at the request of Mayers. The evidence further shows that the records of defendant company were examined to ascertain whether any money or property from this loan went to defendant company, but with negative results. The various installments of interest on the note were paid and properly credited.

The only evidence of record tending to show by whom the said interest installments were paid is found in the testimony of R. C. McIntosh who was a witness for defendant and stated that from October 15, 1920, until sometime in 1924, he was president and general manager of defendant company; that the first notice he had of the existence of the note sued on was in the spring or summer of 1921, at which time he received a notice, or demand, for interest; that he immediately notified plaintiff bank that he knew nothing of the note and refused to pay the interest; and, at the same time, he called the matter to the attention of H. J. Mayers and that Mayers immediately issued his personal check in the amount of $17.50 and mailed it to plaintiff in payment of the said interest.

As to whether H. J. Mayers was president of the defendant company at the time the note in question was executed is somewhat in dispute. Plaintiff's testimony, while not positive, tends to show that Mayers was president at that time, while evidence on the part of defendant strongly tends to show that E. J. Hess was then president. It seems, however, that the records of the defendant company are not clear on this point. It is shown that the annual meetings of the stockholders at which directors were elected and the directors' meetings at which the officers were elected, were held in the month of February. The records do not show positively who was president of defendant company from February to October, 1920, during which time (May 24) the note was made.

Plaintiff's evidence shows that defendant company borrowed money from plaintiff through H. J. Mayers about May, 1919, and that the amount so borrowed was reduced to $4000; that on June 4, 1919, plaintiff took a note of $4000 signed by the Equipment Company and the Mutual Motor Stores Company, both names signed by H. J.

Mayers as president of each, the proceeds thereof being credited to the Mutual Motor Stores Company; that subsequent payments were made on the $4000 loan and renewal notes taken, until the indebtedness was reduced to $1000, and the note sued on was taken in renewal.

The first assignment of error is directed against plaintiff's instruction No. 1, which is as follows:

"You are instructed that if you find and believe from the evidence that before the execution of the note sued on herein the defendant represented and held out the said H. J. Mayers as its officer or agent and permitted the said Mayers with knowledge of the fact to hold himself out as such, with authority to borrow money and make and execute notes in behalf of said defendant therefor, and plaintiff was thereby induced to believe that the said H. J. Mayers had authority to so execute promissory notes, then you may find that the said H. J. Mayers on May 24, 1920, had authority to execute the note sued on in this action."

It is urged this instruction is erroneous because there was no evidence to support it, in this, there was no evidence whatever that defendant represented or held out to plaintiff or anyone else that H. J. Mayers was its president or authorized representative to borrow money in its behalf and to execute notes therefor; that the only evidence offered tending to show that Mayers had such authority, or was held out by defendant as having authority, was testimony purporting to be declarations of Mayers of his own authority; and that such testimony was not admissible; that there was no effect made to show defendant had notice, either actual or implied of these representations of Mayers; that, in this connection, the facts shown are that plaintiff is located in the State of Ohio, where the note is purported to have been executed, while defendant, during the whole time, was located in Kansas City, Mo. In this connection, defendant directs attention to the further fact that the officer of plaintiff who procured the note sued on was an officer of the Mutual Motor Stores Company of Ohio, the joint maker of the note in question, the name of which company also was signed by H. J. Mayers as its president.

The rule is well established that an instruction must not be broader than the issues made by the pleadings and proof. That the instruction is within the pleadings there can be no question, the point being covered by plaintiff's reply to defendant's answer. But we must agree with defendant, having carefully read the record, that the instruction is broader than the evidence introduced. This point was exhaustively discussed in Bank & Trust Co. v. Dry Goods Co., 293 Mo. 194, 238 S. W. 474, a case similar to the one at bar, and such an instruction was declared erroneous. The court said:

"The evidence fails to show that any of the defendant's officers had any notice, express or implied, of this or any other similar action on

the part of its credit man, and it cannot be found from the evidence in this case that they had ever held him out as having any such authority. On the contrary, as soon as the defendant's president learned of this contract, from whom it had been studiously concealed, he promptly repudiated the unauthorized act."

The distinction between the two cases is that here the petition alleges that Mayers was the president of the defendant company at the time the note in question was executed. There was evidence that Mayers signed the minutes of a meeting as president after the date of the alleged execution of the note in question; but there is no evidence even tending to show that he had authority to borrow money and execute obligations of the company therefor. The burden is on plaintiff to show that Mayers had such authority. [Bank v. Hohn, 146 Mo. App. 699, 125 S. W. 539; Bank & Trust Co. v. Dry Goods Co., supra.] It was held in Sanders v. Chartrand, 158 Mo. 352, 59 S. W. 95, 31 Cyc. 1219:

". . . no act of the agent will estop the principal unless it is brought home to his knowledge or repeated so often that notice to the principal is implied from his having taken the benefit of such act . . . and the act of the agent must be within the scope of the agent's duty, or within the scope of the duties the principal has held out the agent to have power to perform."

Reasoning from the rules declared in these citations, we must hold that even a positive showing that Mayers was the president of the defendant company at the time the note was executed, will not avail plaintiff unless it also be shown that Mayers was clothed with authority to borrow money and execute notes therefor for defendant. Plaintiff attempts to meet this situation by directing attention to defendant's instruction "E" submitting the issue of estoppel, which reads:

"The court instructs the jury that if you find and believe from the evidence that one H. J. Mayers signed the name of defendant to the note introduced in evidence for the purpose of procuring something of value either solely for himself or for the Mutual Motor Stores Company, then your verdict must be for the defendant, unless you further find and believe that defendant held out said Mayers as having such authority, and that plaintiff was deceived thereby."

Plaintiff argues that defendant, having thus submitted the question, is now precluded from attacking the instruction of plaintiff (No. 1) on the grounds stated. Defendant replies to this argument by saying it was forced into such position by the action of the court in refusing its proffered instruction "B" as follows:

"The court instructs the jury that there is no evidence in this case that the defendant company held out one H. J. Mayers as having

authority to execute on behalf of the defendant the note introduced in evidence and you will so find."

It was held in the case of Manufacturing Co. v. Mill Co., 285 Mo. 669, 695:

"A party may be drawn into error by the attitude of the trial court. If the court disregards or overrules the contention of a party in presenting a correct theory of the case, and forces the issues upon an incorrect theory, the party so coerced by the court does not waive the right to claim here error committed by the court in that respect." [Donnell v. Wright, 147 Mo. 639, 648; Kennefick v. Insurance Co., 205 Mo. 294; Cochran v. Railway Co., 113 Mo. 359; McGowan v. Ore & Steel Co., 109 Mo. 518.] Plaintiff contends that heretofore appellant has not complained in its brief, specifications of error or in oral argument, that the court erred in refusing defendant's instruction "B." On examination of defendant's motion for new trial we learn that this point was saved, as follows:

"13. Because the court erred in refusing to give instruction "B" requested by the defendant and refused by the court.

While this point was not briefed by defendant, nor mentioned in the specifications of error, yet the fact remains that the point was saved in the motion for a new trial. The record shows the instruction was refused, and we think the point available for defendant's use in attacking the validity of plaintiff's instruction No. 1. We think instruction No. 1 was fatally erroneous in the respect charged.

And this brings us to a discussion of the errors charged in admitting evidence of the declarations of H. J. Mayers as proof of his agency, not otherwise established. That the evidence complained of was the only proof offered tending to show agency is clearly apparent from an examination of the record. The evidence to which this charge of error is directed appears, first, in the deposition of G. W. Kneisley, offered by plaintiff, where the following questions and answers appear:

"Q. State whether or not at that time Mr. Mayers said anything to the officials of the First National Bank with reference to his authority to make loans and to execute paper evidencing the loan.

"MR. THOMPSON: I object to that as not being the proper way to prove authority to testify to the declarations of the purported agent.

"A. He did.

"Q. What, in substance, did he say?

"MR. THOMPSON: My objection applies to this whole line of questions.

"THE COURT: Objections overruled.

"A. He stated that he was acting for The Equipment Company in handling all negotiable paper, acceptances and notes and that his Kansas City bank connections could not extend further accommo-

dations due to their preparation for the moving of crops in their district.''

And S. H. Squire was permitted to testify, over the objections of defendant, as follows:

''A. On or before June 4, 1919, the president of the bank and myself had a personal interview with Mr. H. J. Mayers, who represented himself as president of The Equipment Company, and also president of The Mutual Motor Stores Company, and after going into the financial affairs of the two companies the officers of the bank arranged with Mr. Mayers to take a note of The Equipment Company and the Mutual Motor Stores Company for four thousand dollars. This note was taken June 4, 1919, and at the request of Mr. Mayers was credited to the Mutual Motor Stores Company.

''Q. By whom was the note which you have just referred to signed? A. By The Equipment Company per H. J. Mayers, president, and The Mutual Motor Stores Company by H. J. Mayers, president.''

It should be borne in mind that aside from the evidence quoted, there is nothing in the record tending to show agency in Mayers. The general rule in this respect is laid down in 22 C. J., p. 376:

''Unless the agency is already apparent or is admitted, or unless the statement has been ratified, the relation of agency between the declarant and the person against whom it is sought to use his admission must be established by affirmative evidence other than the declarations or statements of the alleged agent.''

Also in 2 C. J., sec. 692, p. 938, it is said:

''Before the agent's statements can be shown against his principal the agency must be proved by other evidence; as at best, such declarations are mere hearsay,'' etc.

This rule has always been followed in this State. [Makinson v. Fish & Oyster Co. (Mo. App.), 241 S. W. 959.] In Stenson v. Lancaster, 178 Mo. App. 340, 345, 165 S. W. 1158, this court said:

''We are not satisfied with the manner of admission of evidence in the case. . . . In this case proof of his agency was allowed to go upon his own declarations, action and conduct, without first showing prima facie that he was such agent.'' [See, also, Mathes v. Switzerland Lumber Co., 173 Mo. App. 239, 245, 158 S. W. 729.]

Under these rulings we hold the admission in evidence of declarations of Mayers to prove his agency, without first showing that he was such agent, was error.

Further, it is charged the court erred in giving plaintiff's instruction No. 3, as follows:

''You are instructed that the law presumes the validity of the note sued on herein unless the contrary is shown.''

This instruction is clearly erroneous because it places the burden of proof on defendant to show the invalidity of the note. The statute, section 1415, Revised Statutes 1919, provides, in part, as follows:

"When any petition or other pleading shall be founded upon any instrument in writing charged to have been executed by the other party and not alleged therein to be lost or destroyed, the execution of such instrument shall be adjudged confessed unless the party charged to have executed the same deny the execution thereof by answer or replication verified by affidavit."

Here the verified answer denied the execution of the note and the burden of proof was upon the plaintiff to establish its validity. As long ago as Pope v. Risley, 23 Mo. 185, 186, it was held:

"The case of Wahrendorff v. Whittaker, 1 Mo. 205, shows that, under the plea of *non assumpsit* in an action on a note executed by an agent, the agency must be proved before the note can be read in evidence, although the truth of the plea is not supported by an affidavit. The notes, therefore, the subject of this suit, purporting to be executed by an agent, the ordinary denial, such as is required by the present practice act, would seem to be sufficient to put the plaintiffs to the proof of their execution." [See, also, Bank v. Hogan, 47 Mo. 472; Kraemer v. Ward, 149 Mo. App. 432, 130 S. W. 66.] Instruction No. 3 is fatally erroneous, for the reasons stated.

As the judgment will be reversed and the cause remanded for a new trial we need not discuss the remaining charges of error, as they may not again appear. The judgment is reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.