———o———

JAMES GRADY, Plaintiff in Error, vs. THE AMERICAN CENTRAL INSURANCE COMPANY OF ST. LOUIS, Defendant in Error.

1. *Agent—Acts of sub-agent, when binding on principal.*—The rule that an agent cannot delegate his powers unless the sub-agency be directly authorized or ratified by his principal, with full knowledge of the facts, has no application to acts purely ministerial. In such cases if he directs the act or being aware of the circumstances, afterward adopt it as his own, that is sufficient.

2. *Agent—Authority of sub-agent to sign insurance policy—How granted—How shown.*—Where a policy of insurance is signed by a sub-agent for the agent, and the latter afterwards takes the policy, receives the premium, and, with full knowledge of the facts, re-delivers the instrument, it thereby becomes the act of the company as much as though signed by the agent himself. And to prove that such authority is recognized in the sub-agent by the company, similar previous transactions may be shown in evidence.

3. *Evidence—Execution of insurance policy—What testimony sufficient to give question as to, to jury—Proof heard by court in absence of jury.*—In suit on a policy of insurance, where defendant pleads *non est factum*, any evidence tending to show the execution of the instrument, even though contradicted, will be sufficient to give the paper to the jury, who are then to determine what weight shall be attached to the testimony. As to the right of the court to pass upon testimony touching the execution of a paper, a distinction may be drawn between a document whose execution is the main issue being tried, and one the execution of which is preliminary or collateral to the main controversy. In the former case it is a mere usurpation of the province of the

jury, and a practice totally unauthorized, for the court to withdraw the panel and proceed of its own motion to hear testimony touching the execution of the instrument.

4. *Insurance policy—Suit upon—Defenses—Inconsistency.*-[The court intimated without expressing an opinion, that in suit on an insurance policy the defense of *non est factum*, and " that the policy was to be issued on property to be occupied as a boarding house," etc., etc., might be inconsistent pleas.]

## *Error to Buchanan Circuit Court.*

*Ranney and Vories,* for Plaintiff in Error.

I. Whether the execution of the policy of defendant in this suit was sufficiently proven, or whether the acts of the agent. Corby, if informal on account of the manner in which such policy was signed, were ratified or waived by the defendant, were questions solely for the consideration of the jury. (Benton vs. Klein, 42 Mo., 98 ; Deere vs. Plant, 42 Mo., 60 ; McFarland vs. Bellows, 49 Mo., 311 ; Wannell vs. Kem, 57 Mo., 478 ; Allen vs. Jones, 50 Mo., 205 ; Sto. Ag., §§ 252, 253.)

II. Persons dealing with agents clothed with apparent authority, have the right to rely upon their acts and declarations respecting matters within the scope of their apparent authority. (Sumner vs. Saunders, 51 Mo., 89 ; DeBaum vs. Atchison, 14 Mo., 543 ; Howe Machine Co. vs. Snow, 32 Ia., 433 ; Brook vs. Jamison, 55 Mo., 505.)

III. The authority of the agent need not be proved by an express contract of agency, but may be shown by the habit and course of business of the principal. (Johnson vs. Jones, 4 Barb., 373 ; Perkins vs. Wash. Ins. Co., 4 Comst., 645 ;. Com'l Bank vs. Morton, 1 Hill, 501 : Tradesman Bank vs. Astor, 11 Wend., 87 ; Franklin vs. Globe M. Ins. Co., 50 Mo., 461, and cases cited ; Sto. Ag., §§ 252, 253.)

*Doniphan & Reed,* for Defendant in Error.

I. The court did not err in sending out the jury during the examination of J. A. Corby. The question was not the weight of evidence, but the admissibility of the policy. The proof of this question was of course addressed exclusively to the court.

II. The court did not err in refusing to allow the policy to be introduced. There was no proof of its execution. (17 Mo., 440.)

III. There was no proof of ratification, with a full knowledge of all the material facts, by the company. (Sto. Ag., § 250.) Castle, the only witness for plaintiff on this point, said he did not know whether the premium that was paid in was ever sent to the company, or that the company knew, before they were advised of this loss, that there was such a policy in existence.

IV. The signing of this policy was not a mere ministerial act, such as an agent may properly delegate, but required judgment, care and skill, such as the agent alone could exercise. (45 Mo., 221; 1 Hill, 501.)

Vorhes, Judge, delivered the opinion of the court.

This action was founded on a policy of insurance charged to have been executed and delivered to plaintiff by defendant, in which plaintiff's house, described in the petition, was charged to have been insured against loss by fire, to the value of eighteen hundred dollars, for a premium then paid of thirty-six dollars.

The petition was in the usual form, averring a loss by fire, to the full amount of the policy, and a failure of defendant to pay, etc.

The defendant filed its answer to the petition, in which it set up several defenses to the plaintiff's action, among which were the following: " The defendant states that it is not true that by its policy of insurance, dated April, 18th, 1872, in consideration of the sum of thirty-six dollars, paid by plaintiff to defendant; it did insure plaintiff against loss by fire, to the amount of eighteen hundred dollars, or any other sum."

Defendant denies that it ever executed or delivered the policy, as set out in the petition. Defendant denies that plaintiff ever paid the sum of thirty-six dollars, or that it ever received such sum or any other sum for the consideration of the insurance of the property as specified in the petition, or any other property of plaintiff.

For further answer, defendant states, that on the 18th day of April, 1872, it had in the hands of its agent at St. Joseph, Mo., policies signed in blank, to be filled out and signed by said agent, who at that time was J. A. Corby, and when the same were signed by him and the premiums paid to him, the policy or policies were to become binding upon it, if delivered, and that on the said day one of these policies came into the possession of one Castle, a stranger to defendant, who signed the name of such agent to the policy, and without any authority of defendant, delivered the same to plaintiff. Defendant states, that by the terms of said policy it was not to be binding until signed by said Corby, and that at the time plaintiff obtained it, he well knew that the same was not, nor has it yet been signed by said Corby, who was alone authorized to sign the same at St. Joseph.

"Defendant denies that at the time stated in the petition, either at the date of the policy or the destruction of the property, it was worth eighteen hundred dollars, or more than eighteen hundred dollars. And for further and additional matter of defense, defendant states that said policy was issued upon the property to be occupied as a boarding house, and by the specifications contained on the face of such policy, it was stipulated, that in case the property insured became vacant and remained so, without the consent of defendant indorsed on said policy, it became void; and it alleges that a long time prior to such fire the said building became and was permitted to remain vacant without the consent of defendant, by reason of which said policy became void and of no effect."

The defendant also set up several other special matters of defense to the plaintiff's action, but which it is not necessary to set out here in order to a proper investigation of the points raised by the record of the case.

A replication was filed, putting in issue all of the affirmative averments in the defendant's answer. The answer was verified by affidavit. Afterwards the case came on for hearing, and a jury was impaneled to try the issues in the case.

The plaintiff, on his part, offered in evidence the policy of insurance sued on, and which was alleged to have been executed by the defendant. The policy was objected to as evidence by the defendant, on the ground that its execution had not been proved. This objection was sustained by the court, and the policy excluded.

The plaintiff then introduced evidence for the purpose of proving the execution of the policy by the defendant, which evidence was to the following effect: James Grady, the plaintiff, testified that a Mr. Castle first gave him the policy; that he was with Joseph Corby in the insurance business; that he paid the $36 mentioned in the policy; that $20 was paid to Castle at the time he gave witness the policy; and that he afterwards paid Corby $16, which was the remainder of the premium money. A short time after Castle gave the policy to plaintiff he saw Mr. Corby, and the latter asked witness where his policy was. Witness told him it was at home. Corby told witness to bring it up to him,—which witness did. Corby took the policy and kept it for a day or two, and then gave it back to witness, who asked him if it was all right, and he said it was. It was then that witness paid him the $16, and he delivered the policy to witness. Witness told Corby at that time that he had paid twenty dollars of the premium to Castle, and he replied that it was all right. Witness could not read, and when Corby delivered the policy to him he thought his property was insured, and paid him the remainder of the premium money. At the time that Castle first delivered the policy to witness, Corby was not present; but Castle told witness that he and Corby were in partnership in the insurance business, and represented defendant.

Thomas Calligan testified that he was well acquainted with plaintiff, Joseph Corby, and Mr. Castle; that Corby told witness that the policy to Grady, in question, was all right; that Corby and Castle were in the same office; that to witness' knowledge Castle issued a great many policies signed just as this one to plaintiff is signed; that he issued to witness three policies for a Mr. Powers, signed just as this one is

signed—thus, "Corby——Castle"; that witness paid the premiums on these policies. Witness was here shown the report sent by Castle for Corby, to the company, and he identified the policies, reported in this report and sent to the company, as the policies issued to him by Castle, for the benefit of said Powers. Witness testified that some of the policies reported to the company by Corby were signed and issued just as this policy was signed in favor of plaintiff. Witness, on cross-examination, stated that the conversation he had with Corby about this policy was after the loss, and after Corby had ceased to be the agent of the defendant.

James Wolfolke testified that he knew Mr. Corby, and remembered the time Castle was in the office with Corby. Castle was in the habit of signing policies just as the policy to plaintiff is signed. The policies were so signed by Castle in Corby's presence in the office; they were working together. After Castle left Corby, witness acted as sub-agent with Corby. Witness knew about the burning of plaintiff's house; was acting for the defendant at that time with Corby. Witness notified the company, and they sent an agent up, who, with witness, examined into the burning of the house, and had estimates made of the value of the house, and the cost of re-building, etc. After these examinations, the special agent and witness looked in the register of the company, kept by the local agent at St. Joseph, and could not find this policy on the register. The policies spoken of by Calligan, issued for Powers, were on the register. The agent then denied any responsibility on the part of the company for the loss because the policy was not entered on the books and reported to the company.

Other witnesses testified as to the habit of Corby and Castle in issuing policies, in which Castle signed Corby's name, just as was done in the case of the policy to plaintiff, and of Corby receiving the premiums thereon.

Peter B. Castle was also examined, and he testified that he was in St. Joseph, in April, 1872, in the insurance business; was operating with Joseph A. Corby. Mr. Corby re-

presented the American Central Insurance Company of St. Louis; witness had authority from Mr. Corby to solicit insurance, and to sign his name to policies for him.

The defendant received the premiums of the policies issued by witness, and signed in the name of Corby by witness, thus: "J. A. Corby, by Castle." The printed number of the policy (handed witness) to James Grady, is 905; but the written one, as they are numbered in the office, is 201. Witness stated that he signed this policy as it is signed (Corby by Castle). Witness had authority from Mr. Corby to do so. Witness could not say that Corby ever accepted the signature so made to this particular policy; but he accepted the signature to all policies as his signature. He received the premiums paid on this policy. "I reported the policy to Corby," and it was after it was so reported that he received the premium money. This witness testified to other matters which it is not necessary to notice.

After the plaintiff had introduced the foregoing evidence to prove the execution of the policy, the court on its own motion, and against the objection of the plaintiff, sent the jury from the court room, and called and placed on the witness stand, J. A. Corby (the plaintiff at the time objecting and excepting to said action of the court).

Corby was then examined by the court, and testified that he was the agent of the company at St. Joseph, at the time this policy was issued. He denied that Grady ever paid him any of the premium money, or that he ever told Grady that the policy was all right; denied that he ever gave Castle authority to sign his name to this policy, or that he knew that this policy had ever been issued, or that he had ever reported it to his company; or that the monthly reports were made by Castle at his direction.

On cross-examination, witness Corby was asked the following questions, each of which was answered in the negative by said witness, to-wit: 1st. "Did you not, in the city of St. Joseph, a short time after the burning of Grady's house, state to Thomas Calligan, that Grady's policy was issued and your

name signed on the same by Castle at your request, and that Grady had paid you part of the premium money, or words to that effect?" 2nd. "Did you not in the Gazette office, a short time after the burning of Grady's house in the city of St. Joseph, tell H. M. Ramey that Grady's policy was all right, or words to that effect?"

The plaintiff then offered to prove by said Calligan and Ramey, that Corby had made the statements to them contemplated by the foregoing interrogatories; and thus contradict said Corby, and impeach his testimony. This evidence was excluded by the court.

The jury was then recalled by the court, and the plaintiff again offered to read in evidence the policy sued on. This evidence was objected to by the defendant, on the ground that the plaintiff had not made out a *prima facie* case of the execution of the policy, or of its ratification. The objection to the policy was sustained, and it was excluded as evidence in the case. The plaintiff then took a non-suit, with leave to move to set the same aside; which motion was afterwards made and overruled by the court, when the plaintiff saved his several exceptions, and brought the case to this court by writ of error.

It is true, as insisted by the defendant in this case, that an agent cannot delegate his authority to act for his principal, without special authority from the principal to do so, or unless the act of the agent, who delegates the authority, is ratified by the principal with knowledge of the facts; but this rule does not apply to mere ministerial acts to be performed by the agent. It is not necessary that the agent should do such acts in person, if he direct the act to be done, or with a full knowledge of the act, adopt it as his own, it is sufficient. (Commercial Bank &c. vs. Norton and Fox, 1 Hill, [N. Y.] 501; Bartlett vs. Palmer, 8 N. Y., 398; Seymour vs. Wyckoff, 10 N. Y., 213; Lynn vs. Burgoyne, 13 B. Mon., 400.)

The real question to be decided in this case, is, did the plaintiff introduce any evidence in the case which tended to

prove a due execution of the policy of insurance offered in evidence? If any such evidence was introduced, the plaintiff had a right to read the policy to the jury, and then it would be for the jury to decide, after hearing the whole case, what weight should be given to said evidence.

The court seems to have tried this case upon the supposition that it was the right of the court to hear evidence tending to prove the execution of the policy, and also evidence tending to contradict the evidence of the plaintiff, and then decide on the weight of the evidence and exclude the policy, and in that way to decide the very question to be submitted to the jury, which is, whether the policy was duly executed or not. This is a mistaken view of the law.

The rule is, that if there is any evidence in such case, however slight, tending to prove the formal execution of the instrument, it is held to be sufficient to entitle it to go to the jury. (2 Greenl. Ev., § 295.) The court in such case has no right to weigh the evidence; nor is the court called on to decide whether the instrument had been duly executed or not. These questions are peculiarly for the finding of the jury. All that the court is called on to decide, is, whether the plaintiff had adduced any evidence which tends to prove the due execution of the instrument.

In the case of the President, &c., of the Berks and Dauphin Turnpike Road vs. Myers, (6 Serg. & R., 11) Justice Gibson, in discussing the very question arising in this case, uses the following clear and satisfactory language: "It is necessary to premise that there is a striking difference between proof of authenticity, collateral to the issue, and offered for the purpose of introducing the deed itself, and the same proof, where the issue is directly on the fact of sealing and delivering. In the first case the court is the appropriate tribunal to decide the preliminary questions of fact; although, where the evidence is not clear, it may, and usually does, refer the consideration of these questions to the jury, with directions not to consider the deed or paper as being in evidence, if the facts should appear to be unsupported by due

proof; but where the execution of the paper is the fact directly in issue, the jury, and not the court, is to judge of the proofs which, instead of being preliminary to the admission of other evidence to prove the issues, goes itself directly to the jury as evidence in chief of the very fact in controversy. On the plea of *"non est factum,"* therefore, where there is a spark of evidence of sealing and delivering, the courts are bound to permit the instrument to be read ; for it is not for them, but for the jury, to judge of the fact." And again, in the case of Sigfried vs. Levan, (*Id.*, 307) Duncan, Justice, in the examination of the same subject, remarks : " A proper test would be to inquire whether, if the defendant demurred to the evidence, the plaintiff might not refuse to join in the demurrer, unless the defendant admitted on record the sealing and delivery ; that is, whether there were any facts or circumstances given in evidence, from which the jury might infer the fact of sealing and delivery, not that they conclusively must. If the subscribing witness proves the execution of the bond, it is admitted. It then goes in evidence to the jury, but it does not pass to them as *res judicata*, for the defendant may show it to be a forgery supported by perjury. If the bond is proved by the subscribing witnesses, it is read in evidence—why? Not because the court pronounces, by admitting it in evidence, that it is the deed of the party, but because the party has given evidence of its execution."

Testing the present case by the rules laid down in the foregoing cases, we find that Corby had the right, as the agent of the defendant, to make the contract of insurance, and to sign and issue the policy as such agent.

Grady, in his evidence states, that after he received the policy from Castle, he, at the request of Corby, returned it to Corby ; that Corby, after having retained it for some days, re-delivered the policy to Grady, after being informed of the whole facts of the case, and then received the premium.

This evidence certainly tends to prove the due execution of the policy ; for, if after the policy was delivered to Grady,

it was returned by him to Corby, after a full knowledge of the facts, with his name signed to it by Castle, and if he then received the premium money—these acts on his part made the signature to the policy as much his own, and the contract of insurance as much the act of the company, as if it had then just been made and signed by him. It is true that this evidence is positively contradicted by Corby; but it has been before stated that it was not the province of the court to decide on the weight of the evidence.

There was also evidence tending to prove that policies had been returned to the company at different times signed by Castle, as the one to Grady was signed, and that the premiums had been received on the same without objection. This is evidence, though slight it may be, to prove that the company authorized or ratified the act of said Corby, in acting and transacting business for the company through a sub-agent.

The action of the court in examining witness, Corby, against the protestations of the plaintiff to the contrary, is remarkable; for if there was no evidence tending to prove the execution of the policy, it was the duty of the court to exclude the policy as evidence. If there was evidence tending to prove the execution of the policy, it was not for the court to hear contradictory evidence and decide the case upon the weight of the evidence. The court could not in this way assume the province of the jury, and decide the only issue of fact made for their consideration by the plea of *non est factum*. The court, after the plaintiff had introduced evidence tending to prove the execution of the policy, had no right to hear, on its own motion, evidence disproving the execution of the policy, and thus withdraw the main issue in the case from the jury. (Scott vs. Gallagher, 11 Serg. & R., 347; Flourney vs. Warden, 17 Mo., 435.)

It may not be necessary, but I suppose it will not be improper to suggest that the plea of *non est factum*, and the further defense, " that said policy was issued upon the property to be occupied as a boarding house, and by the specifica-

tions contained on the face of such policy it was stipulated, etc.," might not under our statute be considered consistent defenses; at least, it may be doubted whether the defenses would be considered consistent. This is, however, only a suggestion; no opinion is expressed on that point, and no such point is made by the parties to the action.

The judgment will be reversed and the cause remanded; the other judges concur.