## SCOTLAND COUNTY NATIONAL BANK, Respondent, v. W. C. HOHN, Appellant.

**St. Louis Court of Appeals, February 1, 1910.**

1. **BILLS AND NOTES: Negotiable Instrument Law: Payee is "Holder."** The payee of a note, and not one who claims to have possession of it as agent of the payee, is the "holder," within the meaning of Section 30 of the Negotiable Instrument Law, which provides that an instrument payable to order is negotiated by the indorsement of the holder completed by delivery.

2. ———: ———: **Transfer by Payee's Agent: Agency Proved, How: Evidence.** The authority of an agent to indorse a note for the payee may be proved as agency is proved in other cases and by a writing conferring the authority.

3. ———: ———: ———: ———: ———: **Execution of Power of Attorney Unproved.** An instrument relied on to prove the authority of an agent to indorse a note for the payee is not competent evidence until proof is made that it was executed by the payee.

4. ———: ———: ———: ———: ———: ———: **Effect of Acknowledgment.** The fact that such an instrument is acknowledged before an officer would not authenticate it as the act of the payee or render it admissible, without other proof of its authenticity, our statutes making no provision for the acknowledgment of such an instrument.

5. ———: ———: ———: **Suit by Endorsee: Essential to Show His Title.** To show that plaintiff held title to notes sued on, indorsed and transferred by one as agent of the payee, it is essential to prove the indorser had power to dispose of them.

Appeal from Scotland Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*O. D. Jones* and *E. R. Bartlett* for appellant.

*E. R. McKee, J. M. Jayne* and *E. Schofield* for respondent.

GOODE, J.—Action on two promissory notes each dated November 25, 1905, for $150, payable March 20, 1906, and May 20, 1906, after date, for value received to order of Planters' Register Company, at Scotland County National Bank, of Memphis, Missouri, with compound interest at the rate of eight per cent per annum.   Both notes were indorsed on the back ,"Planters' Register Co., by C. H. Allison, with power of Atty." They were purchased by the Scotland County National Bank, plaintiff in the action, for $282, or at a discount of six per cent or $18 from the face of the notes.   Such was the testimony of the vice-president, who handled the transaction, who testified further that in making the purchase he dealt with C. H. Allison.   Testimony was given by him and other witnesses, conducing to prove the bank purchased the notes in good faith, before maturity and in the usual course of business.   In   the autumn of 1905, C. H. Allison and John or Jack Allison, were engaged in making contracts with farmers in the vicinity of Memphis, Missouri, which contracts authorized each person dealt with to act as sole agent for the sale of a publication known as the Planters' Register, over certain territory. The Allisons purported to represent the Planters' Register Company of Roanoke, Virginia, and, perhaps, too, the Stone Printing & Manufacturing Company of the same place.   Nothing is revealed in the record about the Planters' Register Company, except that it was not a corporation, and likely it was a partnership; but the inference is fair that some persons were doing business under that style and owned the copyright of the book called "Planters' Register."   The Stone Printing & Manufacturing Company was a corporation and from a document received in evidence, dated December 9, 1903, and signed by the Stone Printing & Manufacturing Company, we glean something of the relation of that company to the Planters' Register Company.   This contract said the Stone Company, in consideration of money deposited with it

and other things, had agreed with the Planters' Register Company and parties who might be authorized to sell the Planters' Register, that the Stone Company would manufacture copies of the book of certain materials and in a certain form, keep a sufficient number on hand to supply orders promptly and pack and deliver free on board cars at Roanoke, all copies ordered, charging therefor the price of one dollar, but would not fill an order if the party ordering meant to sell at retail for less than $3.50 a volume. One or both of the Allisons would approach a farmer, represent to him the book met with a ready sale, that money was to be made by acting as agent to sell it in a particular territory, but to obtain the agency the farmer must execute his note or notes for $300, to be held by C. H. Allison until the person appointed as agent had paid for 300 books at one dollar each, when the note would be returned to him; further representing that they (the Allisons) had seven or eight trained men ready at Memphis to help any person who would take an agency, to make sales in his territory. Whether the two Allisons held themselves out as co-operating is not certainly shown but no doubt they were acting together either openly or secretly. Defendant was induced to accept an appointment as agent for the sale of the book in Knox county, the appointment being conferred by contract containing many particulars which we need not state in this case. Among the material stipulations was one that he was to have the exclusive sale in said county for one year from November 25, 1905, and the Planters' Register Company agreed to sell him at one dollar a volume, as many copies of the Register as he might want "in addition to what he has this day set aside and reserved, subject to his order." The Planters' Register Company agreed also to furnish prior to December 20th, all necessary blanks for orders and weekly reports free of charge, and to give him necessary instructions. This document bore this inscription: "The Planters' Register Co., by C. H. Allison,

with power of attorney;" but the testimony of the defendant goes to prove it was signed by John Allison, who passed himself off as C. H. Allison. This circumstance, if material at all, is only so because C. H. Allison claimed to hold a power of attorney from the Planters' Register Company, authorizing him to execute contracts in its name, whereas John Allison claimed no such authority. Simultaneously with the execution of the instrument appointing defendant agent, the latter signed and delivered the notes in controversy, he says, to John Allison, supposing the latter was C. H. Allison. The notes were afterwards indorsed, as we have seen, by the true C. H. Allison to the plaintiff bank. Similar transactions were entered into by the Allisons with other farmers about the same time, and the plaintiff bank bought all the notes received by the Allisons, their total amounting to over three thousand dollars, and several suits are now pending in the courts below similar to this one. The vice-president of the bank testified he bought the notes in suit from C. H. Allison and accepted the indorsement on them by the latter on the faith of a power of attorney submitted by C. H. Allison. This power of attorney was received in evidence over an objection interposed by defendant to its competency, on the ground of lack of proof of its execution by the Planters' Register Company. The document is as follows:

"Power of Attorney.

Know All Men by These Presents:

That we, the undersigned, Planters' Register Company, do hereby constitute and appoint C. H. Allison our true and lawful attorney, for us and in our name and stead, to appoint managers and agents issuing contracts to same (said contracts to be furnished by us, or such as we may approve) and sign our name thereto; to assign territory to said managers and agents, and sell books to them, receiving cash or notes for same, as in his judgment may be advisable; to endorse or sign our

name,to any and all papers as may become necessary in transacting any business in connection with the sale of the Planters' Register or the business of the Planters' Register Co.

And we hereby ratify and confirm all that said C. H. Allison, our true and lawful attorney may lawfully do by virtue hereof.

In witness whereof we have hereunto set our hands this 21st day of October, A. D. 1905.

The Planters' Register Co., Roanoke, Va.

By J. W. Butler,

Southern and Western Manager.

(Notarial Seal) Joe Edwards.

Davidson Co., Tenn., Notary Public.

Acknowledged before me this 21st day of October, 1905. My Commission expires Jan. 21, 1907.

JOE EDWARDS."

We consider it unnecessary to state more of the evidence or to digest the instructions given and refused, which were both long and numerous. It is enough to say the plaintiff asked, and was allowed, a verdict only in the event of the jury finding the notes had been endorsed to plaintiff for value before maturity and in good faith, and without notice or knowledge of the alleged false and fraudulent representations by which they had been procured from defendant, or that the consideration for them had failed. One line of defense insisted on by counsel for defendant, but rejected by the court, was that the power of attorney under which C. H. Allison assumed to endorse the notes in the name of the Planters' Register Company, the payee, had not been authenticated so as to make it admissible in evidence, and hence as the notes were payable to order, they were acquired by the bank without an indorsement; in other words, were not negotiated to the bank and, therefore, the same defenses and equities could be set up against the bank as could have been set up against the original payee, the Planters' Register Company, if it had sued. These notes

are controlled by the negotiable instrument law, ap. proved April 10, 1905. [Laws 1905, p. 243, *et seq;* 1 Mo. Ann. Stat., p. 519, *et seq.*] Section 30 of said act says an instrument payable to order is negotiated by the indorsement of the holder completed by delivery. The "holder" in the present case was the payee and not C. H. Allison, who claimed to have possession of the notes as agent of the payee, and attempted to transfer them by an indorsement as agent of or attorney in fact for the payee, and not by his personal indorsement. That he was an agent with authority to indorse them might be proved as agency is proved in other cases and by a writing conferring the authority. [Neg. Inst. Act, sec. 19.] But the instrument relied on to do this was not competent evidence until proof was made of its execution by the Planters' Register Company, and no proof of that fact was offered. [Lewin v. Dille, 17 Mo. 64; Tittman v. Thornton, 107 Mo. 500.] The document purported to be acknowledged before an officer in Tennessee, but our statute makes no provision for the acknowledgment of such an instrument, which was not in the form of a deed and had nothing to do with real estate. Hence the certificate of acknowledgment, if otherwise competent, was not in the form prescribed by our statutes for certificates and did not authenticate the document as the act of the Planters' Register Company or render it admissible without other proof of its authenticity. In order to show plaintiff held title to the notes it was essential to prove C. H. Allison had power to dispose of them, to say nothing of what was requisite to give plaintiff the status of an innocent purchaser for value before maturity, in due course of business and entitled to immunity from equitable defenses. [1 Dan. Neg. Inst. (5 Ed.), sec. 299; Patterson v. Cave, 61 Mo. 439; Dorn v. Parsons, 56 Mo. 601; Hair v. Edwards, 104 Mo. App. 213, 217, 77 S. W. 1089; Rice v. McFarland, 41 Mo. App. 489.] If there is a second trial it will be better to go into the character of the Planters' Reg-

ister Company, show who composed it and the full extent of the authority conferred on the Allisons to represent it as agents in selling territory and taking and indorsing negotiable paper.

This case has been treated by both sides as one wherein the facts would be for the jury, as tending to establish a defense resting on fraud and failure of consideration, in an action by the original payee, and also as against plaintiff unless he was an innocent holder for value. We have not deemed it necessary to examine this question or to express an opinion on it.

The judgment is reversed and the cause remanded. All concur.