CUMMINS et ux. v. DIXON et al.

No. 43392.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

Jones & Alexander, D. Calhoun Jones and Philip S. Alexander, St. Louis, for appellants.

James M. Douglas, Max Sigoloff, St. Louis, Thompson, Mitchell, Thompson & Douglas, St. Louis, of counsel, for respondents.

DALTON, Judge.

Action for specific performance of a contract to sell described real estate in the City of Clayton. Plaintiffs alleged that, as assignees of a lease containing an option to the lessees to purchase the real estate, they had exercised the option and defendants had refused performance. The cause was submitted solely upon plaintiffs' evidence and the trial court entered a judgment dismissing plaintiffs' petition. Plaintiffs appealed.

Neither plaintiffs nor defendants requested findings of facts or conclusions of law and the trial court made none. Nor is there a memorandum or statement of the reasons upon which the judgment was based. Plaintiffs-appellants contend that under the undisputed facts they are entitled to specific performance, while defendants-respondents urge numerous reasons for sustaining the judgment. The appeal was heard at the April Session 1953, and an opinion adopted reversing the judgment and ordering the cause remanded with directions to enter judgment in accordance with the prayer of the petition. Thereafter, a

motion for rehearing was sustained in order to re-examine the record with reference to the execution, identity and genuineness of the alleged assignment of the lease and option. The cause has been re-briefed, re-argued and reassigned. It is admitted that defendant Dixon was at all times a straw party holding title for the owners, defendants Rubin, who executed the lease in question. We shall adopt portions of the prior opinion and shall refer to the appellants as plaintiffs and to respondents Rubin as defendants.

By a written lease dated February 11, 1941, defendants, husband and wife, leased the described real estate to The Texas Company, a corporation of Delaware, for a term of ten years from and after March 15, 1941. Certain provisions of the lease should be set forth, as follows:

"(10)—Option. Lessor hereby gives the lessee the right and option to purchase the demised premises and all structures and improvements thereon at any time during the term of this lease or any extension or renewal thereof for the sum of Forty-Five Thousand Dollars ($45,000.00). * * *

"Lessee's notice of election to purchase shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option term expires. Lessor shall, when requested by lessee, deliver to lessee complete abstracts of title, furnish up-to-date survey by a licensed or registered professional engineer or surveyor, showing elevations of property and corners marked with concrete monuments, upon receipt of which the lessee shall have a reasonable time in which to examine the title and, upon completion of title examination, if title is found satisfactory, shall tender the purchase price to lessor, and lessor, at time of such tender, shall deliver to the lessee a good and sufficient warranty deed conveying the premises to the lessee free and clear of all encumbrances (including, without limiting the foregoing, the rights of dower and/or courtesy)."

"(11)—Application of Option Purchase Price. In event accruing rentals are insufficient to reimburse lessee for expenditures

made by lessee hereunder, and in event lessee exercises the option to purchase the demised premises, lessee may apply such part of the purchase price as is necessary to (a) completely reimburse itself for such expenditures and (b) pay any other indebtedness of lessor to lessee, together with interest at six per cent."

"(13)—Assignment and Sub-letting. Lessor consents that lessee may assign or sublet the premises, provided that lessee shall remain liable to lessor for the performance of all the terms hereof."

"(14)—Notice. Notices from lessee to lessor shall be sufficient if delivered to lessor, or if placed in the United States Mails addressed to the address shown in this lease. Notices from lessor to lessee shall be sufficient if posted in the United States Mails, postage prepaid, addressed to the lessee's principal place of business as shown in this lease."

"(16)—Successors and Assigns. This agreement shall be binding upon and shall enure to the benefit of the parties hereto and their respective successors or assigns."

The alleged assignment relied upon is as follows:

"Assignment of Lease and Option."

"Know all men by these presents, That the undersigned, The Texas Company, a Delaware corporation, with offices at 332 South Michigan Avenue, Chicago, Illinois, for and in consideration of the sum of Five Dollars ($5.00) to it in hand paid and other good and valuable consideration, receipt whereof is hereby acknowledged, does for itself, its successors and assigns, hereby assign, transfer and set over unto Paul Cummins and Ruth Cummins, his wife, of 310 North Camelia, Los Angeles 49, California, their heirs, executors, administrators, and assigns, all of its right, title and interest in and to that certain lease, dated February 14, 1941, to it from Fannie Rubin and Jacob Rubin, her husband, of Clayton, Missouri, covering a tract of land, together with all appurtenances thereto in the City of Clayton, County of St. Louis, State of Missouri, more particularly described as follows: [correct description is here omitted] including all rights and options to purchase said premises contained in said lease, subject to all the terms and conditions thereof as therein set forth.

"A memorandum of said lease was duly filed for record in the office of the Recorder of Deeds for St. Louis County, Missouri on August 1, 1941 in Book 1795 at page 429.

"In witness whereof, The Texas Company has caused these presents to be signed by its duly authorized officer and its corporate seal to be hereunto affixed this 8th day of March, 1951.

Attest:
E. M. McCutcheon
Asst. Secretary.
Impressed seal "The Texas Company."

The Texas Company,
By J. M. Doss
Asst. Manager.
Form approved
G. A. B."

(The names "E. M. McCutcheon," and "J. M. Doss" and the letters "G. A. B." are in writing.)

"Fannie Rubin and Jacob Rubin
7547 York Drive
Clayton, Missouri

On March 9, 1951, plaintiff Paul Cummins sent to defendants, by registered mail, this letter:

In re: Real Estate—Clayton, Missouri
Central and Carondelet Avenues

"Dear Mr. and Mrs. Rubin: By assignment dated March 8, 1951, The Texas Company assigned to us all of its right title and interest in and to its lease from you dated February 14, 1941 of the above premises, including all of its rights and options to pur-

chase the said premises contained therein. For your information a copy of the assignment is enclosed.

"We hereby elect to purchase the demised premises for Forty-five Thousand ($45,000.-00) Dollars in accordance with all the terms and conditions of the said lease. We will appreciate it if you will have your abstract of title to the premises, or other evidence of title, brought down to date and submit it to us. Very truly yours, s/Paul S. Cummins, c/Ruth Cummins." The address given was "310 North Camelia, Los Angeles 49, California."

Defendants, by answer or at the trial, admitted having entered into the lease; that they received on March 10, 1951, the letter above quoted and a copy of the purported assignment; and averred in their answer that: " * * * the defendants (Rubins) have refused and continue to refuse to recognize any claim of the alleged plaintiffs in and to the real estate mentioned in plaintiffs' petition."

Defendants did not furnish the abstract of title requested by plaintiffs, made no reply to the purported election to purchase and, so far as the record shows, took no action of any kind after receiving the March 9, 1951 letter. Receiving no answer to his letter, Cummins consulted his attorney and the present suit was filed April 9, 1951. Plaintiffs averred that they had at all times been ready, willing, and able to purchase in accordance with the option and, at the trial, Paul Cummins testified that on March 9, 1951 and thereafter he was prepared to pay cash for the property and he exhibited to the court a cashier's check dated April 4, 1952, payable to Paul S. Cummins, for $45,-000.

Plaintiffs' evidence consisted of the lease, the purported assignment thereof, the notice of election to purchase (together with the copy of the assignment enclosed therewith), the cashier's check, and the return receipt signed by defendant Jacob Rubin acknowledging receipt of the purported election to purchase. In addition, plaintiff Paul Cummins testified that he was in the soybean business, doing business under the trade name of United Soya Company, and that he was also in the real estate and investment business. In connection with the notice of election to purchase, Mr. Cummins testified that his signature appeared thereon, but that the name "Ruth Cummins" was in fact written by him; that he had specific authority to sign his wife's name to the document by virtue of a power of attorney which she had executed, making him her attorney in fact with respect to real estate transactions; that such power was executed in the Bank of America at its Beverly Hills main branch some 2½ or 3 years prior to trial, but that after making a diligent search he had been unable to locate it. Mr. Cummins also testified that the alleged assignment of lease and option (which had then been admitted in evidence) and the letter of notice of election to defendants were both executed while he was in Chicago transacting business with J. J. Casey of The Texas Company at a time when his wife was not present; and that, thereafter, he made a written agreement with respect to a lease of the premises to The Texas Company as lessee, but that he had received no rent. There was no testimony as to where or by whom the assignment was executed or from whom Mr. Cummins received it.

Mrs. Cummins testified by deposition, taken after proper notice, at which, however, no one on behalf of defendants appeared, that she is engaged with her husband in the buying, developing, and leasing of real estate; that she took no active part in the operation of the business but that legal titles to properties were taken in both their names; that Mr. Cummins acted in her behalf so far as all of her interests in the real estate business were concerned; that she had executed a power of attorney sometime in May, June, July, or August of 1949, but had been unable to locate it; that plaintiffs' Exhibit 1 was, in substance and language, like the general power of attorney which she had executed and delivered to her husband and to which she referred. This power of attorney was, in part: "I hereby constitute and appoint Paul S. Cummins my true and lawful Attorney in Fact,

to do and perform in my name, every act, of any nature whatsoever, relating to the acquisition, purchase, transfer, conveyance or assignment of real and personal property, giving and granting unto my said attorney full power and authority to do and perform every act and thing whatsoever necessary to be done, as fully and to all intents and purposes as I might do if personally present, hereby ratifying all that my said Attorney in Fact shall lawfully do or cause to be done under this Power of Attorney."

Mrs. Cummins testified that such power of attorney had never been revoked and that her husband was authorized by her to affix her signature to any or all documents pertaining to the transaction of business affairs in which she was interested, including the instant election to purchase.

Mr. John J. Casey, in charge of the real estate department for the central territory of The Texas Company, testified that he had known Mr. Cummins for about five years and that he (Casey) had participated in the transaction in which the lease of The Texas Company was purportedly assigned to plaintiffs; that the company and Mr. Cummins entered into an agreement for a lease on the property on March 9, 1951, the same day the notice of election was mailed to defendants; that the lease from defendants to the company was drawn on the printed form of The Texas Company but that, as a rule, the typewritten riders were prepared by lessor's attorney; that he could not testify as to who had prepared the typewritten riders attached to the lease in question.

It is clear that the option to purchase was an integral part of the lease executed by defendants and thus the lessee's payment of rent was a sufficient consideration for the option. Chapman v. Breeze, 355 Mo. 873, 876(2), 198 S.W.2d 717, 719 (2–5). Paragraph 13 specifically provides that lessee may assign or sublet the premises and paragraph 16 provides that lease "shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors or assigns." Defend-

ants contend, however, that The Texas Company had no right to assign the lease to plaintiffs when the lease is construed as a whole. Their position is that, despite the provisions just referred to and despite the fact that there is no other term of the lease which specifically limits the right of The Texas Company to assign or specifies the type or nature of the business in which assignees must be engaged in order to effect a valid assignment, nevertheless, the parties did not contemplate an assignment of the lease to anyone other than one engaged in the sale of petroleum products. Defendants say that this is demonstrated by the fact that the rental provision in the lease provided for lessee to pay a rental of $200 per month payable in advance, and that, in addition, lessee was to pay 1¼ cents for each gallon of lessee's gasoline sold from the premises in excess of 140,000 gallons per year, provided the total annual rent was not to exceed the sum of $3,000. While we agree with defendants that the rental portion of the lease did contemplate that lessee or its assignee or sublessee was to dispense gasoline on the premises for the period of the lease (so long as the purchase option was not exercised), we cannot agree that such rental portion prohibited the company from assigning to these plaintiffs. The fact that plaintiffs were not engaged in the retail gasoline business at the time the lease was allegedly assigned does not mean that plaintiffs (or any other assignees) would not be able to continue to sell gasoline on the premises through some arrangement with others engaged in that business. Furthermore, so far as anything appearing in the lease is concerned, the assignees might, as did plaintiffs in this case, elect to immediately exercise the purchase option which, if validly done, would eliminate any interest that defendants-lessors had in the future payment of monthly rentals. A lessor may restrict the right of assignment in any manner he sees fit. Covenants dealing therewith, however, should not be extended by implication. We find no express language in the lease which in any way restricts, or any language which by fair implication restricts, the unqualified right of assignment given by paragraph 13;

and this unrestricted right of assignment is made more certain when paragraph 13 is considered with paragraph 16, providing that the agreement shall bind and inure to the benefit of the successors or assigns of the parties. Garland v. Lisetta Inv. Co., Mo.App., 234 S.W.2d 347(1) (2, 3).

■ Defendants further contend that the provisions of the lease concerning the option and providing that the title shall be "found satisfactory" by lessee shows that "the option is based upon a relationship of personal trust and confidence on the part of defendants" and that the option, therefore, is not subject to assignment. We do not agree. We find nothing in the lease contract between these defendants and The Texas Company, a Delaware Corporation, which in anywise indicates that the option contained therein is based upon a relationship of personal trust and confidence on the part of defendants. The lease contract containing the option is not personal in character. No personal agency, solvency, credit, or personal services are involved. Neither lease nor option is founded upon trust and confidence reposed in the character and skill of a particular person. Nor does the option indicate that the skill or character of any specific agent or person was relied upon to approve the title in the event of the exercise of the option. The word "satisfactory" is later discussed. The intention of the parties as evidenced by specific provisions authorizing the lessee to assign the lease and premises has been referred to. The contention is overruled.

■ Defendants further contend that, even if the lease and option were validly assigned and the option exercised, the contract of sale is executory on plaintiffs' part and cannot be enforced against defendants because plaintiffs cannot be compelled to perform on their part, since plaintiffs have the power to find the title not "satisfactory" "even after the court has entered its decree." Defendants cite Jones v. Jones, 333 Mo. 478, 63 S.W.2d 146, 147, 153, 90 A.L.R. 219; 81 C.J.S. Specific Performance, § 11, d, p. 431, 49 Am.Jur. 46, Specific Performance, Sec. 34 and addition in 1953 pocket parts. We do not find performance of the contract optional or conditional on plaintiffs' part because of the use of the word "satisfactory." As stated, the title was not to be "satisfactory" to any particular individual or agent. Clearly plaintiffs may not act arbitrarily, capriciously or in bad faith in passing upon the title to the property in question. Knisely v. Leathe, Mo.Sup., 178 S.W. 453, 458(5). The use of the words "if title is found satisfactory" did not render the contract too indefinite to be enforced against the plaintiffs, since "that which the law says a party should be satisfied with, the law will say he is satisfied with," to wit, a good and marketable title. There is, however, authority to the contrary. See 66 C.J. 852, Vendor and Purchaser, Sec. 525; 55 Am.Jur. 633, Vendor and Purchaser, Sec. 163; 17 C.J.S., Contracts, § 495, p. 1006. We hold that the contract was not unenforceable against plaintiffs because of the word "satisfactory."

Defendants next contend that the purported assignment from The Texas Company to plaintiffs was not admissible in evidence because there was no proof of its execution and genuineness; and that "there was a failure of proof of the purported assignment." The sufficiency of the identification of the document and the sufficiency of the proof of its execution and validity are both involved. In the petition plaintiffs alleged that "under the terms of said lease, The Texas Company was entitled to assign the same and the premises during the term of said lease; (and) that on the 8th day of March, 1951, The Texas Company did assign the same to plaintiffs * * *." Defendants specifically denied these allegations and further denied that "said paper (copy of the alleged assignment sent to defendants) constitutes a valid, enforceable and subsisting assignment under said lease of The Texas Company." Defendants alleged that "there never was either privity of contract or estate between plaintiffs and defendants"; and that "plaintiffs are total strangers to the contract" of lease and option.

At the trial, after the alleged "assignment of lease and option" was marked by the re-

porter for the purpose of identification, the defendants' efforts to exclude the same from evidence cover some nine pages of the record. Plaintiffs' counsel first asked Paul Cummins if he was familiar with the exhibit and as to the source of his familiarity with it. The witness did not answer the question, nor state the source of his familiarity, but, after an objection was made and overruled, he stated: "Yes, this is the assignment of the lease of The Texas Company." A further objection was then made and overruled and the witness then added "This is an assignment of option, which I exercised in writing by registered mail." On objection "to all of that," as a conclusion of this witness, the court said "Yes, that may be stricken." Later, in the course of his testimony the witness said: "This document is an assignment." An objection, that the statement was a legal conclusion, was overruled, although the court indicated that the objection was valid. Subsequently the court said: "I think, strictly speaking, the document speaks for itself, and should be introduced in that way." The court ruled "that his (Cummins') testimony as to an assignment of lease may stand." This was all the evidence as to the execution, identity and genuineness of the exhibit.

When the exhibit was offered in evidence, counsel for defendants made numerous and repeated objections to the "purported assignment," including the following: "That it is not signed by an officer of the corporation, but merely by one purporting to act as assistant manager"; that no authority for execution was shown "on behalf of The Texas Company; no evidence of that, and nothing appearing on this paper; that it is hearsay, and not binding upon these defendants * * * there is no acknowledgment, or resolution of the Board of Directors of The Texas Company authorizing the persons who apparently signed this paper * * *; it would not be binding on The Texas Company, and it is not therefore binding on the defendants in this case * * this is likewise inadmissible and incompetent because it is contrary to the terms of the lease itself." All objections were over-ruled and the exhibit was received in evidence.

▮▮▮ We think the identification of the exhibit was wholly insufficient for its admission in evidence or to establish the fact of a valid assignment of the lease by The Texas Company. There was no evidence that the purported assignment was executed by The Texas Company or where or by whom it was executed. The signatures were not identified and there was no evidence that the signatures appearing on the document were the signatures of persons bearing such names, or that the persons bearing such names held the indicated offices or positions with the named corporation. There was no evidence as to who placed the seal on the document, or by what authority, or that the seal attached was the seal of the corporation. There was no evidence concerning the delivery or receipt of the document. Plaintiff did not testify as to when he received it or from whom. Nor did witness Casey identify the document, or signatures, or testify concerning its execution, or delivery. We find nothing in the record and briefs evidencing an intention on defendants' part to admit any of these facts or to waive proof thereof.

▮▮▮ "As a general rule, the execution or authenticity of a private writing must be established before it may be admitted in evidence." 32 C.J.S., Evidence, §§ 733 and 741; 20 Am.Jur., Evidence, Sec. 922, p. 776; Ramsey v. Waters, 1 Mo. 406 (bill of sale); Lewin v. Dille, 17 Mo. 64 (contract); Wonderly v. Lafayette County, 150 Mo. 635, 644, 51 S.W. 745, 45 L.R.A. 386 (assignment); Scotland County National Bank v. Hohn, 146 Mo.App. 699, 704, 125 S.W. 539 (power of attorney); Tittman v. Thornton, 107 Mo. 500, 509, 17 S.W. 979, 16 L.R.A. 410 (assignment); Johnson v. American Ry. Exp. Co., Mo.App., 245 S.W. 1071, 1072 (contract); Ruckman v. R. C. Stone Mill. Co., 139 Mo.App. 256, 259, 123 S.W. 69 (contract). Plaintiffs had the burden of proof to establish a valid assignment. Bersch v. Sander, 37 Mo. 104, 107; 4 Am. Jur., Assignments, Sec. 128, p. 331; 6 C.J. S., Assignments, § 143, p. 1204. The pur-

ported assignment did not prove itself. Credit Alliance Corporation v. Bryan, Mo. App., 27 S.W.2d 441, 444(4) (endorsement on note). The evidence offered was insufficient to make a prima facie showing of execution by authority of The Texas Company. Further, the ultimate fact as to the execution and authenticity of the alleged assignment of the lease and option was for the trier of fact. Grady v. American Cent. Ins. Co. of St. Louis, 60 Mo. 116, 123. On the record presented, such proof being insufficient, the court could reasonably find against the plaintiffs on this issue.

 Plaintiffs admit that defendants made "vigorous and voluminous objections" to the introduction of the alleged assignment, but they insist that no "specific objection to lack of proof of execution or authenticity" was made; that, if "proof of the signatures and that the person therein named held the offices stated therein was necessary," it was waived by failure to raise the specific objection; and that plaintiffs were "prevented from making such proof by the erroneous ruling of the court below." We think the pleadings and objections were sufficient to require plaintiffs to make proof of the execution and authenticity of the alleged assignment as essential to a finding in their favor. Although defendants offered no evidence and made no affirmative attack upon the validity of the alleged assignment, there was no waiver of such proof. The failure to make such proof no doubt resulted from the action of the court in the overruling of defendants' objections and from the admission of the document, apparently, on the theory that "the document speaks for itself, and should be introduced in that way." Considering the record as a whole, however, we have reached the conclusion that to affirm the judgment on this ground alone would, under the circumstances, result in a miscarriage of justice. Instead, judgment should be reversed and the cause remanded to permit a full showing of all the pertinent and material facts. It is apparent from the record that the facts have not been fully developed.

Since the cause is to be remanded for further hearing, we shall dispose of certain other contentions presented by defendants and considered in the prior opinion. These portions of the prior opinion have been re-examined in view of the subsequent briefs and are re-adopted, as modified.

Defendants contend that if The Texas Company did make a valid assignment, plaintiffs' letter to defendants was not a valid exercise of the option to purchase. Defendants assert four separate reasons in support of this contention.

Defendants say that the language of the letter is "equivocal, ambiguous and uncertain". The letter was in part: "We hereby elect to purchase the demised premises for Forty-five Thousand ($45,000.00) Dollars in accordance with all the terms and conditions of the said lease." Defendants say that the *terms and conditions* of paragraph 10 are so affected and modified by the provisions of paragraph 11 as to make the option purchase price uncertain; in other words, that while paragraph 10 gives an option to purchase for $45,000, paragraph 11 provides that if accrued rentals held by the lessee under other paragraphs are not sufficient to reimburse the lessee for certain expenditures which might have been made, or to pay any other indebtedness of the lessor to the lessee, then lessee may apply such part of the purchase price ($45,000) as is necessary to reimburse the lessee, and hence the purchase price is indefinite. Defendants contend that "it is utterly impossible to determine what the lessee might claim as an offset against the purchase price."

 In the first place, we think the language of the notice of election is plain and unambiguous and constitutes assignees' recognition of the fact that by the terms of the lease $45,000 is the purchase price. But if it may be said that under the language of the notice, plaintiffs would be entitled to withhold from the $45,000 figure any amount due from lessors to lessee or the lessee's assignees under other paragraphs (and there was no evidence that any amount was due), any such amounts are readily capable of determination and neither the existence of any such items nor their amounts are left to the whim or fancy of

plaintiffs. So that the language of the notice did not, because of the possibility of the necessity for adjustment of the purchase price, make that price equivocal, ambiguous, or uncertain. On the contrary, the notice constituted a positive exercise of the purchase option at a price determinable under provisions fixed by the parties ten years before. See, Herzog v. Ross, 355 Mo. 406, 410, 196 S.W.2d 268, 271, 167 A.L.R. 407. We hold that the contract was not unenforceable because of the provisions of paragraphs 10 and 11 of the lease, particularly in view of the provisions of paragraph 10, with reference to furnishing abstracts of title and providing for the examination and approval thereof.

 Reason No. 2 is that the notice of election was not an acceptance of the offer (option to purchase) but was, in effect, a counter-offer because it imposed a new or different burden upon lessors not contained in the original option to purchase. This, because the notice of election said in part: "We will appreciate it if you will have your abstract of title to the premises, or other evidence of title, brought down to date and submit it to us." As the election was on a letterhead with a Los Angeles, California, address, the request for the submission of the abstract obviously contemplated that it be mailed to plaintiffs at their California address. Defendants, pointing out that the place of performance of the contract was Clayton, Missouri, argue that such a request (to submit the abstract at any place other than Clayton) was a failure to accept the exact terms of the option offer. It will be remembered that paragraph 10 provided, in part: "Lessor shall, when requested by lessee, deliver to lessee complete abstract of title . * * * upon receipt of which the lessee shall have a reasonable time in which to examine the title and, upon completion of title examination, if title is found satisfactory, shall tender the purchase price to lessor, and lessor, at time of such tender, shall deliver to the lessee a good and sufficient warranty deed conveying the premises to the lessee free and clear of all encumbrances * * *." The request for an abstract of title was in strict compliance with plaintiffs' rights and defendants' offer under the lease. That tender and payment of the purchase price and delivery of the deed were to be made in Clayton does not necessarily require submission of the abstract to lessee or its assignee in Clayton. We think the only reasonable construction of the language of the lease, in the light of the fact that the lease was originally made with The Texas Company, a Delaware corporation with its place of business (from which the lease was executed) in Chicago, Illinois, and in light of the further fact that The Texas Company had an unrestricted right of assignment, is that the abstract of title was to be submitted to lessee or its assignee at any reasonable location indicated. The submission of the abstract was an act to be done by lessors looking toward the actual performance of the contract, viz.; the exchange of the purchase price and the warranty deed. The situation here is not comparable to those in the cases cited by defendants in which new terms were imposed in purported acceptances, thus causing the acceptances to be in the nature of counteroffers.

 Reason 3 is that the notice of election was untimely because lessors received no notice from The Texas Company that it had assigned to plaintiffs and defendants did not know assignees. The lease contains no requirement that the company notify lessors of an assignment. Furthermore, defendants-lessors received with the notice of election a copy of the company's alleged assignment to plaintiffs (mailed the day after it was dated). And The Texas Company was not obligated under any terms of the lease to assign only to persons personally known to lessors.

 Another reason defendants assign is that the notice of election, being signed only by Paul Cummins and not by Mrs. Cummins, was void under the Statute of Frauds and ineffective for lack of mutuality of obligation. We have reviewed the uncontradicted testimony that Mrs. Cummins in writing authorized her husband to act as her agent in the purchase of the real estate. This was sufficient compliance with the

Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S. And, irrespective of the necessity for mutuality in the sense that each party to a contract must have the remedy of specific performance, see: Rice v. Griffith, 349 Mo. 373, 383(3), 161 S.W.2d 220, 225(4–7); Eisenbeis v. Shillington, 349 Mo. 108, 113(1), 159 S.W.2d 641, 643(1); Mo.Anno. to Rest.Conts., Vol. II, § 372, p. 236), the fact is that, by filing this suit and under their testimony, plaintiffs could be required to specifically perform in a suit by defendants-lessors-vendors. We have read the record carefully and have reached the conclusion that there is no apparent basis for not believing the testimony of plaintiffs with reference to the execution by Mrs. Cummins of the general power of attorney to her husband and that we should not be justified in finding to the contrary, or in holding that the finding of the trial court was based upon disbelief of this testimony.

■ Defendants say further that it would be inequitable to enforce the purchase option because plaintiffs, in their notice of election, did not offer to pay all or any part of the purchase price or offer security therefor. This contention overlooks the terms of the option providing that if an abstract were requested lessee was to have a reasonable time to examine the title and, if found satisfactory, then and only then was lessee to tender the purchase price in exchange for a warranty deed. There was no duty on plaintiffs to make a tender, because defendants prevented the arrival of the time for tender by refusing to furnish an abstract and by having refused to recognize plaintiffs' right to elect to exercise the option. Under the circumstances, proof of ability to perform made at the trial was sufficient. See: Edwards v. Watson, 258 Mo. 631, 645–648, 167 S.W. 1119, 1123; Sinclair Refining Co. v. Clay, D.C.N.D.Ohio, E.D., 102 F.Supp. 732, 735(7).

■ Defendants also contend that specific performance would be inequitable because: the increased value of the property since the lease was executed makes the $45,000 purchase price inadequate; defendants may have been "overreached" in the transaction; and there is no showing that the real estate involved is "unique" in the sense which is necessary to give plaintiffs a right to specific performance. Defendants point out that specific performance is not a matter of right but is a remedy applied by courts of equity, depending upon the facts of a particular case; and that a chancellor has a judicial discretion within the established doctrines and principles of equity to award or withhold the remedy. For a discussion of the matter of discretion as to specific performance, see Eisenbeis v. Shillington, supra, 159 S.W.2d 643–645 and Rockhill Tennis Club v. Volker, 331 Mo. 947, 56 S.W.2d 9.

■ But we are not here concerned with a trial chancellor's discretion or with our discretion on this review de novo, for the simple reason that there was no evidence which established any fact or factual situation upon which any discretion could be exercised. There was no evidence as to the reasonable value of the property. We are urged by defendants to take judicial notice of the fact that real property values have greatly increased in the last ten years. But taking judicial notice of that fact would not aid defendants because we could not take judicial notice of the value of a specific piece of property. So far as the record shows, the $45,000 price may have been a high or a low price for the specific property either when the option was given or when it was exercised.

Likewise, there was no evidence even intimating that defendants were "overreached." (The lease shows that one of defendants' present attorneys took the acknowledgments of defendants when they signed the lease.) The lease agreement was plain and unambiguous; it granted to lessee an unrestricted right to assign; it set out the terms and conditions of a purchase option and the manner in which that option was to be exercised.

The record is barren of any evidence from which it could be found that specific performance would result in undue hardship to defendants, or in a disproportionate-

ly small advantage to plaintiffs as compared with the burden imposed upon defendants; or that the contract is unduly oppressive, burdensome, unconscionable, or unfair, or resulted from innocent misrepresentation of fact, unilateral mistake of fact, mistake of law, surprise, or undue solicitation. In short, on the record here (and again we note the total absence of any evidence by defendants), there is no reason why the contract, if made, should not be enforced.

With respect to the contention that the real estate involved is not "unique," in Rice v. Griffith, supra, 161 S.W.2d 225, we said: "A specific tract of land, however, is regarded as 'unique and impossible of duplication,' 'a favorite and favored subject' of property, having 'a peculiar value,' and, hence, a purchaser may have specific performance of a contract to convey land irrespective of special facts showing the inadequacy of a legal remedy." See also, Farrington v. Hays, 353 Mo. 194, 202, 182 S.W.2d 186, 190(1–3).

The judgment is reversed and the cause is remanded.

All concur.